IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DWAYNE E. HEAD,

    Petitioner,

v.                                                        Civil Action No. 1:14cv144
                                                        (Judge Keeley)

R.A. PERDUE, Warden,

    Respondent.

## REPORT AND RECOMMENDATION

### I. Background

On August 26, 2014, the *pro se* petitioner, an inmate incarcerated at FCI Gilmer in Glenville, West Virginia, filed a petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. §2241, seeking restoration of Good Conduct Credits ("GCT") revoked by the Bureau of Prisons ("BOP"). The petitioner paid the filing fee on August 29, 2014. On September 2, 2014, the undersigned made a preliminary review of the petition and determined that summary dismissal was not warranted. Accordingly, an Order to Show Cause was issued against the respondent. On September 30, 2014, the respondent filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause. On October 1, 2014, because petitioner was proceeding *pro se,* a Roseboro Notice was issued. On October 23, 2014, petitioner filed his response, titled Petitioner's Opposition to Government's Motion to Dismiss or for Summary Judgment. On October 30, 2014, the respondent filed a reply.

This matter, before the undersigned for review, report, and recommendation pursuant to LR PL P 2, is ripe for review.

### II. Facts

On April 26, 2010, while on bail in another case, petitioner was charged in the Superior Court of the District of Columbia with 2 counts of Felony Assault with a Dangerous Weapon (knife); one count of Felony Threat to Kidnap or Injure a Person; one count of Felony Carry a Dangerous Weapon; and one count of Offenses Committed During Release.

On July 22, 2011, after a four-day jury trial, petitioner was found guilty of Count Three, Felony Threat to Kidnap or Injure a Person.[1] The Court also found petitioner guilty of Count Five, Offenses Committed During Release. A mistrial was declared on the remaining counts; the government later declined to go forward on those counts and they were dismissed. On December 16, 2011, petitioner was sentenced to 48 months imprisonment on the threats crime, to be followed by three years' supervised release.[2] On December 5, 2012, by unpublished opinion, his conviction was affirmed by the D.C. Court of Appeals.[3]

Petitioner was committed to the custody of the BOP on an unknown date.[4]

On June 27, 2013, while housed at the Federal Transfer Center ("FTC") in Oklahoma, petitioner received an incident report (#2461938) for violating BOP Discipline Code 224, Assaulting Any Person.[5] This report was based on a review of CCTV video at approximately 5:08 p.m. on June 27, 2013, which revealed that petitioner had approached inmate Gregory Credit in the common area of Unit 5F; after they exchanged words, petitioner punched Credit in

---

[1] Felony Threat to Kidnap or Injure a Person is a violation of D.C. Crimes Code §22-1810.

[2] Information regarding petitioner's Superior Court of the District of Columbia criminal history can be found on PACER and at https://www.dccourts.gov/cco/maincase.jsf

[3] See Head v. United States, No. 11-CF-1673 (D.C. Dec. 5, 2012).

[4] A review of the BOP's online Inmate Locator indicates that petitioner is 59 years old and is projected for release on December 26, 2016.

[5] See Declaration of Sarah Lilly, (Lilly Decl.), Dkt.# 11-1 at 2; see also Discipline Hearing Officer ("DHO") Report, Dkt.# 1-7 at 14.

the face, knocking him to the floor. Inmate Credit got up, walked to the unit officer on duty and told him what had just happened.[6] Credit sustained a black eye in the incident.[7]

Although the incident occurred on June 27, 2013 and the incident report was written the same day, it was initially suspended and referred to the FBI/Assistant U.S. Attorney ("AUSA") for possible prosecution.[8] Once it was determined that no criminal charges would be brought, the incident report was released for administrative processing on July 8, 2013.[9] Petitioner received a copy of the incident report at 3:00 p.m. that day.[10] He was advised of his rights and made no comment.[11]

A Unit Discipline Committee ("UDC") was held at FTC Oklahoma on July 11, 2013 at 12:35 p.m. Petitioner declined to make a statement at the time, stating that he would make his statement later to the DHO.[12] Based on the seriousness of the charge, the UDC determined that greater sanctions should be imposed than were available at the UDC level and thus it would refer the charge to the DHO for further hearing.[13] At the end of the hearing, petitioner was provided copies of the Inmate Rights at Disciplinary Hearing form and his Notice of Disciplinary Hearing.[14] The Notice stated the charge he faced and indicated that his hearing would be

---

[6] DHO Report, Dkt.# 1-7 at 14.

[7] Dkt.# 11-1 at 17.

[8] Dkt.# 11-1, §25 at 6.

[9] DHO Report, Dkt.# 11-1 at 13.

[10] Dkt.# 11-1, §14 at 5.

[11] Dkt.# 11-1, §24 at 6.

[12] Dkt.# 11-1, §17 at 5.

[13] Dkt.# 11-1, §§18(B) and 19.

[14] Dkt.# 1-5 and 1-4.

scheduled at the next available time.[15] The Inmate Rights at Disciplinary Hearing form, *inter alia*, advised petitioner of his right to have a staff representative and to call witnesses on his behalf at the Disciplinary Hearing. At this time, petitioner indicated that he wanted a staff member to represent him, and indicated that he wished to call witnesses at the hearing.[16]

Petitioner was transferred to FCI Gilmer on July 16, 2013.

On September 11, 2013, a DHO at FCI Gilmer conducted a hearing on the incident.[17] Prior to the hearing, petitioner waived his rights to a staff representative and witnesses.[18] He admitted the charge.[19]

On September 16, 2013, the FCI Gilmer DHO found petitioner guilty of violating BOP Discipline Code 224, Assaulting Any Person. The DHO sanctioned petitioner with (1) disallowance of fourteen days Good Conduct Time, (2) twenty days disciplinary segregation, suspended pending 180 days clear conduct (3) and 60 days loss of commissary and email, suspended pending 180 days clear conduct.[20] Petitioner received a copy of the DHO Report on September 25, 2013.[21]

Following the DHO's findings, petitioner filed appeals through each level of the BOP's Administrative Remedy Process. The BOP denied Petitioner's appeals at each level.[22]

---

[15] Dkt.# 1-4.

[16] Id.

[17] Dkt.# 11 at 5.

[18] Dkt.# 11-1, §§ II(A) and III(C)(1).

[19] Dkt.# 11-1, §III(A) & (B).

[20] Dkt.# 11-1 at 14.

[21] Dkt.# 11-1 at 14.

[22] Lilly Decl., Dkt.# 11-1, ¶5 at 2.

4

Therefore, petitioner has exhausted his administrative remedies and may challenge the violation in federal court.

### III. Contentions of the Parties

#### A. The Petition

In the §2241 petition, petitioner asserts that his DHO hearing was held in in the wrong venue and that it violated his procedural and substantive Due Process rights.

As relief, petitioner requests that the finding of guilt be set aside; the incident report expunged from his record; and the 14 days of good time credit be restored to him.

#### B. The Respondent's Dispositive Motion

The respondent asserts that the petition should be dismissed or summary judgment granted in its favor. It contends that the petitioner was afforded all requisite due process rights throughout the disciplinary process. In addition, it maintains that the DHO relied upon adequate evidence when finding the petitioner guilty of the violation.

#### C. Petitioner's Response in Opposition

Petitioner reiterates his arguments and attempts to refute the respondent's on the same, contending that the respondent has overlooked and misconstrued his arguments.

#### D. Respondent's Reply

The respondent reiterates its request to dismiss the case or grant summary judgment in its favor, reiterates its arguments, and notes that there is no requirement in the Regulations that mandates that a DHO Hearing be held at the same institution that generated an incident report. It attaches a declaration from the DHO, denying having coerced or threatened petitioner to obtain his waiver of a staff representative and witnesses.

### IV. Standard of Review

A. **Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765

(4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary

judgment. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co</u>., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 1986.

## V. <u>Discussion</u>

### A. <u>Petitioner's Procedural Due Process Rights were not Violated</u>

Petitioner alleges that his procedural due process rights were violated because he never received a 24-hour Notice of Hearing from FTC Oklahoma's Warden or staff, or a 24-hour Notice, rights to a staff representative or the right to access the names of his witnesses, prior to the DHO hearing at FCI Gilmer.

The Supreme Court has identified due process requirements for inmate disciplinary actions: (1) written notice of the charges must be given to the inmate at least twenty-four hours before his appearance in front of the prison disciplinary board; (2) prison disciplinary officers must make a written statement describing the evidence relied upon and supply reasons for any disciplinary actions; (3) the inmate must be allowed to call witnesses and present evidence at the disciplinary hearing unless allowing this would be unduly hazardous to institutional safety or correctional goals; (4) if the inmate is illiterate or the hearing involves a complex matter, the inmate must be granted the opportunity to have a non-attorney representative assist him

throughout the disciplinary process; (5) the decision-maker must be impartial. Wolff v. McDonnell, 418 U.S. 539, 564-571 (1974).

Here, setting aside for the moment that there is no *mandatory* requirement that an inmate receive an incident report within the first 24 hours,[23] the petitioner was first given written notice of the DHO hearing on July 11, 2013; therefore, the petitioner was given more than adequate notice of the hearing, because the hearing was not conducted until September 11, 2013, two months later.[24] Second, the DHO provided the petitioner with a written report describing the evidence used in finding he violated the prison rule. Third, the petitioner declined to call witnesses or present evidence at the disciplinary hearing. Fourth, the petitioner is not illiterate, and chose not to have a staff member represent him at the disciplinary hearing. Finally, the petitioner does not allege and no evidence shows that the decision-maker was not impartial.

Petitioner contends that after initially indicating that he wanted a representative and witnesses for the DHO hearing at the conclusion of his July 11, 2013 UDC hearing, ultimately, just before the September 11, 2013 DHO hearing began, the DHO coerced him into waiving his rights to both, to enable the DHO to go forward with the hearing without delay that day. He asserts that he only "signed off . . . as being guilty as charged "under threat and Duress [sic],"[25] because the alternative was six months of administrative segregation in the Special Housing Unit ("SHU").

---

[23] "You will *ordinarily* receive the incident report within 24 hours of staff becoming aware of your involvement in the incident." 28 C.F.R. §541.5(a) (emphasis added).

[24] As noted *supra,* the Incident Report was delayed at first by being sent to the FBI and AUSA, to be evaluated for possible criminal charges.

[25] Dkt.# 14-1, ¶21 at 4.

9

The parties are in marked disagreement on this point and have each provided sworn affidavits.[26] Petitioner's affidavit claims that the DHO coerced him into waiving the right to a staff representative and witnesses by threatening to put him into the Special Housing Unit ("SHU") for "about 4 – 6 months because it takes about that much time to locate everyone and to get their statements."[27] By contrast, R. Devereaux, DHO, denies ever having coerced or threatened petitioner with confinement in the SHU if he did not proceed with the DHO hearing without waiving his rights to witnesses and a staff representative. He points out that petitioner because had already been in FCI Gilmer's general population for two months prior to the DHO hearing, there would have been no reason to place him in the SHU.[28]

Credibility determinations may sometimes be made on a written record without live testimony. Specifically, there is no prohibition against a court making credibility determinations based on competing affidavits in certain circumstances. See Tanberg v. Sholtis, 401 F.3d 1151, 1161 (10th Cir. 2005); United States v. Barsanti, 943 F.2d 428, 440 (4th Cir. 1991). Choosing between conflicting affidavits without a hearing may be reasonable when one affidavit is cryptic or conclusory with respect to a contested issue of fact and the other affidavit sets out a detailed account of events. *Cf.* United States v. McAtee, 481 F.3d 1099, 1103 (8th Cir. 2007) (explaining that the inclusion of specific details in an affidavit was an indicator of the affiant's credibility) with United States v. Perez, 393 F.3d 457, 464 (4th Cir. 2004) (stating that a court may discount "unsupported, conclusory statements" in an affidavit).

---

[26] See Dkt.# 14-1 and Dkt.# 15-1.

[27] Dkt.# 14-1, ¶19 at 4.

[28] Dkt.# 15-1, ¶¶6 – 10 at 1-2.

Here, both parties have provided detailed affidavits on the issue. However, a credibility analysis is moot, for several reasons. An inmate has no general constitutional right to have a staff representative at prison disciplinary hearings. Hudson v. Hedgepeth, 92 F.3 748, 751 (8th Cir. 1996). Staff representatives are only required where an inmate is illiterate or "the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case." See Wolff, 481 U.S. at 570; Hedgepeth, 92 F.3d at 751. Neither scenario is present here. Further, as for the witnesses petitioner identified on July 11, 2013 as the ones he wanted called on his behalf at the DHO hearing (his Unit Officer, the Lieutenant on duty, and his cell mate), to support his theory that Credit wanted to "check in" to the SHU, and deliberately instigated the incident as a way to get there, petitioner later waived his right to their appearance and the DHO Report contains no documentation of any objections by petitioner on the issue. Further, despite petitioner's waiver, the DHO ended up considering the evidence of Lt. Andrade, likely the same Lieutenant petitioner wished called. The DHO also considered the medical assessments of petitioner and Credit, performed immediately after the incidents, as well as both Credit's and petitioner's statements, all information consistent with what petitioner claimed he wished to present. Finally, even if petitioner's FTC Oklahoma Unit Officer and cellmate had been present to attest to petitioner's reasons for striking Credit, it would not have changed the outcome of the DHO hearing, because the reasons for the assault were irrelevant. Petitioner was shown on surveillance video striking Credit and admitted to doing it.

Accordingly, the undersigned finds that the BOP provided the petitioner with adequate procedural due process pursuant to Wolff. See also McKinnon v. Caraway, 2010 WL 3123264 at **3-4 (procedural due process requirements satisfied where inmate "received advanced written

notice of the DHO hearing" and DHO "did not prepare the disciplinary report, investigate the infraction, or testify as a witness").

**B. <u>Petitioner's Substantive Due Process Rights were not Violated</u>**

"[T]he requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary board to revoke good time credits." <u>Superintendent, Massachusetts Correctional Institution, Walpole v. Hill</u>, 472 U.S. 445, 455 (1985). The standard is satisfied if there is some evidence supporting the conclusion reached by the disciplinary board. <u>Id</u>.

In <u>Hill</u>, a prison disciplinary board determined that three inmates violated prison rules by assaulting another inmate. The prison disciplinary board's conclusion was supported by little evidence: a "guard heard some commotion and, upon investigating, discovered an inmate who evidently had just been assaulted. The guard saw three other inmates fleeing together down an enclosed walkway. No other inmates were in the area." <u>Hill</u>, 472 U.S. at 456. Despite little evidence supporting the conclusion, the Supreme Court held that the evidence was sufficient because "[t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." <u>Hill</u>, 472 U.S. at 457.

Here, as noted *supra,* petitioner admitted committing the violation to the DHO. He stated he hit inmate Credit once after Credit made racial slurs toward him.[29] While petitioner also later claimed that Credit kicked him in the knee before he ever struck Credit,[30] there is no

---

[29] Dkt.# 11-1, §V at 14 – 15.

[30] <u>See</u> July 11, 2013 Notice of Disciple Hearing Before the (DHO): " . . .[the] guy cussed me out and kicked me and called me 'nigger.'" Dkt.# 11-1 at 8; <u>see</u> <u>also</u> October 7, 2013 Regional Administrative Remedy Appeal, "As I approached Him [sic], he kicked me (while sitting down at table [sic]) in my knee joint[.]" Dkt.# 1-3.

12

contemporaneous support in the record for that allegation. Both inmates were examined in Health Services immediately after the incident; Credit reported having been punched in the face by a black inmate.[31] He had a blackened right eye and complained of a 7 out of 10 scale of aching pain there;[32] petitioner denied any injury, stating "I did not fight."[33] Further, the Operations Lieutenant K. Andrade, who was called to the 5F Unit immediately after the incident occurred reported that she interviewed both inmates; Credit reported that he was sitting at the table eating his meal when he had a verbal confrontation with petitioner during which Credit called petitioner "nigger." Credit reported that in response, petitioner hit him in the face. When petitioner was initially interviewed, he denied knowing anything about the incident. He claimed that he was elsewhere at the time, heating up his food at the microwave; and that he knew nothing about any problems Credit was having in the Unit with other inmates, because he was minding his own business.[34] However, unbeknownst to petitioner at the time, review of surveillance video that captured footage of the incident proved otherwise, likely leading to petitioner's later admission to having struck the blow.

In the instant case, the DHO explained that he relied upon (1) the Reporting Officer's statement in the Incident Report and Investigation; (2) the memorandum submitted by Operations Lieutenant K. Andrade; and (3) the June 27, 2013 medical assessments conducted on both inmates. Therefore, the DHO relied upon "some evidence" in concluding that the petitioner violated the prison rule and revoking the petitioner's good conduct time. The violation that petitioner admitted to, Assault of Any Person, even when no serious injury is inflicted, "threatens

---

[31] Credit later identified petitioner as his assailant.

[32] Dkt.# 11-1 at 18 – 24.

[33] Dkt.# 11-1 at 20.

[34] Dkt.# 11-1 at 16 – 17.

the health, safety and welfare of not only the inmate involved, but that of all other inmates and staff . . . [because] [i]nmates observing the assault may become involved thus creating larger disturbance for staff to control,"[35] is categorized as a violation of Greatest Severity Level Prohibited Acts. See 28 CFR §541.3. Accordingly, sanctions are required as a deterrent to committing such violations.

Therefore, the undersigned finds no substantive due process violation and notes that petitioner's lack of truthfulness in his initial interview undermines the reliability of his present claims. Moreover, considering the available range of potential sanctions for his offense, petitioner's sanctions were rather lenient.[36]

## C. Venue for DHO Hearings

Although the petitioner alleges that the DHO hearing was conducted in the wrong venue because the Incident Report was issued at FTC Oklahoma and the DHO hearing was not conducted until he was transferred to FCI Gilmer, the undersigned agrees with the respondent that the Regulations do not require that a DHO hearing be conducted in the same institution that issued the incident report. See 28 C.F.R. Part 541.

## VI. Recommendation

---

[35] See DHO Report, Dkt.# 11-1, §VII at 14.

[36] "Recommend parole date rescission or retardation. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended). Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended). Disciplinary segregation (up to 12 months). Make monetary restitution. Monetary fine. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation). Change housing (quarters). Remove from program and/or group activity. Loss of job. Impound inmate's personal property. . . Restrict to quarters." See 28 CFR §541.3 - Prohibited acts and available sanctions.

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or Motion for Summary Judgment (Dkt.# 10) be **GRANTED**, and the petitioner's §2241petition be **DENIED and dismissed with prejudice**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, or by **June 9, 2015**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: May 26, 2015

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE